IN THE MATTER OF AN INCREASE IN FEES BY THE NEW JERSEY STATE BOARD OF DENTISTRY.

Superior Court of New Jersey
Appellate Division

Argued February 6, 1979—Decided February 27, 1979.

Before Judges HALPERN, ARD and ANTELL.

*Mr. Arthur Meisel* argued the cause for appellant New Jersey Dental Association (*Messrs. Jamieson, McCardell, Moore, Peskin* and *Spicer,* attorneys).

*Mr. Bertram P. Goltz, Jr.,* Deputy Attorney General argued the cause for respondent New Jersey State Board of

Dentistry (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Ms. Erminie Conley,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

ANTELL, J. A. D. Appellant New Jersey Dental Association challenges the validity of *N. J. A. C.* 13:30–8.1, a regulation adopted by the State Board of Dentistry (Board), amending its schedule of fees for licensure. *N. J. S. A.* 45:1–3.2 authorizes the Board to prescribe or change such charges by regulation in order to meet its estimated required operating expenses but specifies that these "shall not be fixed at a level that will raise amounts in excess of the amount estimated to be so required." It is undisputed that the Board's anticipated revenues for fiscal year 1976 from the amended fee schedule was $184,100 and that its estimated expenses for that period was $156,800. Thus, revenues would have exceeded estimated expenses by $27,300. The record shows, however, that the actual excess for that fiscal year totaled $40,643.

Relying on the familiar principle that the plain and unambiguous language of the Legislature is not open to interpretation, *Duke Power Co. v. Patten,* 20 *N. J.* 42, 49 (1955), appellant argues that the Board's use of its rule-making power so as to provide for an excess of revenue over anticipated expenses goes beyond the limits of its authority as defined by the statute.

In defense of its regulation, the Board essentially urges that because the many "imponderables" involved make the fixing of a budget, "an exercise in predicting the unpredictable," it must be allowed "maneuvering room" to meet its statutory responsibilities. It therefore maintains that despite its literal meaning the statute should be understood to reflect a legislative intention that the Board be allowed to provide for a "reasonable" excess of revenue over expenses.

What is overlooked by the Board's argument is that its right to reasonable flexibility in establishing its budget is not

questioned. Nowhere does appellant suggest that there be any curtailment of the Board's power to estimate its future expenses, and it is in the making of these approximations that the Board's needed "maneuvering room" is to be found. However, once its estimate is made, the Board may not establish its charges in disregard of the clear statutory language that these "shall not be fixed at a level that will raise amounts in excess of the amount estimated to be required." That appropriation statutes since 1974, as the Board points out, provide for the appropriation of receipts over expenses to the various state professional boards, thereby evidencing a legislative expectation that such excesses will occur, does not alter our view. Where expenses and revenues are merely estimated the probability of a surplus must always be contemplated, and it was for such fortuitous excesses that provision was made in the appropriation acts. But this lends no support to the Board's contention that it is free to plan a surplus or, using the words of the statute, that its charges may "be fixed at a level" that will produce a surplus.

Nor is the result which we here reach inconsistent with the rule cited by the Board that income from licensing fees may, within reasonable limitations, exceed the cost of regulation and enforcement so long as the primary purpose of the assessment is regulatory and not for raising general revenue. *Moyant v. Paramus,* 30 *N. J.* 528, 546–47 (1959) ; *Daniels v. Point Pleasant,* 23 *N. J.* 357, 362 (1957) ; *Bellington v. East Windsor Tp.,* 17 *N. J.* 558, 565 (1955) ; *Salomon v. Jersey City,* 12 *N. J.* 379, 390 (1953). It is noted first that the cases in which this rule was formulated arose under statutes which granted licensing powers but without expressing any limitation, as this statute does, on the revenues which might be raised by fees for licensure. Furthermore, we have acknowledged that the *actual* revenues to be realized from the amended regulation may very well exceed the Board's *actual* operating expenses since there is always a chance that expenses have been overestimated and revenues

underestimated. The question of whether this eventuality should be inhibited is not presented. We hold only that under the statute the Board does not have the power to provide for a surplus by fixing its charges at a level which, by the Board's own calculations, projects revenues greater in amount than what the Board itself estimates is required to defray its proper expenses.

It is well settled that in the execution of its rule-making power a state agency may not go beyond declared statutory policy. *Mercer Cty. #4, N. J. Civ. Serv. Ass'n v. Alloway,* 61 *N. J.* 516 (1972), aff'g 119 *N. J. Super.* 94 (App. Div. 1972); *Abelson's, Inc. v. N. J. State Board of Optometrists,* 5 *N. J.* 412, 423–24 (1950); *Kamienski v. Bd. of Mortuary Science,* 80 *N. J. Super.* 366, 369–70 (App. Div. 1963). "Neither the administrative agency nor we may take liberties with statutory language so clearly expressed * * * even to subserve a supposedly desirable policy not effectuated by the act as written." *R. H. Macy & Co., Inc. v. Director, Div. of Taxation,* 77 *N. J. Super.* 155, 173 (App. Div. 1962), aff'd 41 *N. J.* 3 (1963).

For the reasons discussed, the Board's amended regulation, *N. J. A. C.* 13:30–8.1, is in conflict with *N. J. S. A.* 45:1–3.2 and is therefore invalid.

Reversed.