236 N.J. Super. 174 (1989)
564 A.2d 1217
WILLIAM J. ROKOS, JR., PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1989.
Decided September 29, 1989.
*175 Before Judges PRESSLER, LONG and GRUCCIO.
Samuel J. Halpern argued the cause for appellant.
Francine W. Kaplan, Deputy Attorney General, argued the cause for respondent Board of Trustees, Public Employees' Retirement System (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney; Mary C. Jacobson, Deputy Attorney General, of counsel; Francine W. Kaplan, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
In this public-employee pension case, petitioner, William J. Rokos, Jr., appeals from the determination of the Public Employees' Retirement System (PERS) that the salary he was paid for his service as presiding judge of the municipal courts of Union County during calendar year 1986 does not constitute creditable compensation for pension purposes. We reverse.
There is no dispute of fact. In 1985, after two years of studying the municipal court system of this State, the Supreme Court Task Force on the Improvement of Municipal Courts, chaired by Associate Justice Robert L. Clifford, issued its report in which, among other proposals, it recommended the creation of the office of presiding judge of the municipal courts *176 and the designation by the Chief Justice, with the advice of the Assignment Judge, of one such presiding judge for each of the State's fifteen vicinages. The presiding judge, to be appointed from among the municipal court judges sitting in the vicinage and required to report directly to the Assignment Judge of the vicinage, was envisioned by the report as performing supervisory, managerial, administrative and coordinating functions within the vicinage in a manner generally akin to the function of the presiding judges of the various functional units of the Superior Court. See R. 1:33-6. The report further recommended that the municipal court presiding judges, in addition to performing the judicial duties regularly incident to their individual municipal judgeships, also perform, on specific assignment, those vicinage-wide judicial duties involving matters in which uniformity of approach and consistency of result are particularly desirable, including, illustratively, reviewing all County Prosecutor recommendations on downgrading or remanding to a municipal court, hearing all applications for bail and for temporary commitment, reviewing the jail population on a continuing basis, and expediting the processing of municipal court matters accompanying indictable cases. Finally, the report proposed that the duties of the presiding judges be performed either full or part-time depending on the vicinage's needs and that the compensation for their service be provided out of State funds, including "all benefits and pensions attendant to their status as State-funded judges." This, of course, was to be in addition to their salaries as municipal court judges, which are paid by the appointing municipal unit.
Upon its review of the Task Force report, the Supreme Court elected to institute a presiding-judge pilot project in four vicinages, Camden, Mercer, Union and Atlantic/Cape May, and by order entered on December 23, 1985, it "supplemented and relaxed" the Rules of Court to "permit the establishment" of such a project "pursuant to guidelines to be established by the Administrative Director of the Courts." By order entered January 8, 1986, the Chief Justice appointed a Presiding *177 Judge  Municipal Court in each of those four vicinages, the designations "effective January 1, 1986 and [to] * * * terminate December 31, 1986, unless otherwise ordered." The original designee for the Union County vicinage was petitioner Rokos, then sitting as municipal court judge in both Roselle and Roselle Park. The life of the pilot project was in fact extended by a series of subsequent orders of the Supreme Court entered on November 10, 1986, June 23, 1987, May 2, 1988, and most recently, June 27, 1989, which extends the project in the same four vicinages until December 31, 1989. Two of the originally appointed presiding judges, those for the Atlantic/Cape May and Camden vicinages, have continued to serve since the inception of the project by companion orders which have respectively "extended" their "designations" congruently with the extension of the project.
The question of the precise manner in which the presiding judges would be paid and the amount of their compensation had been dealt with by the Supreme Court and the Administrative Office of the Courts (AOC) prior to the January 1 inception of the program and the making of the original appointments. There were evidently some mechanical problems in arranging for the state funding of these presiding-judge appointments since municipal court judges, as was recognized by the Task Force in its report, are not State employees for payroll purposes but are rather, for those purposes, employees of the appointing municipal unit. Moreover, although the designated presiding judge was required by way of qualification to be a sitting municipal court judge, it was obviously inappropriate for the "employing" municipality to bear the financial onus of the presiding-judge function since the judge, in performing that function, would be serving the entire vicinage at the behest of, responsible to, and in a manner ultimately prescribed and controlled by the Supreme Court and its support agencies. Accommodation of all of these considerations was reached by agreement of each of the "employing" municipalities in the four vicinages to the AOC proposal that the presiding judge would *178 initially submit his voucher for per diem compensation[1] to the "employing" municipality and that the municipality would add the required compensation to the judge's regular salary check and would also bear the responsibility for social security and PERS contributions and deductions for the entire amount. The municipality would in turn be reimbursed periodically by the AOC out of State funds in its control by way of the mechanism of a "grant" application.
Petitioner Rokos, whose presiding-judge designation was effective January 1, 1986, then undertook the duties of that office, devoting thereto three days a week independent of his municipal judgeship duties, which he performed on the other two days of the week. According to the voluminous documents of record, he performed during calendar year 1986 a wide variety of both administrative and extra-municipal judicial duties under the direction and supervision of the Assignment Judge and, in accordance with AOC guidelines, filed extensive and detailed periodic reports respecting his presiding-judge duties.
Although petitioner had not anticipated so early a retirement when he first accepted the presiding-judge appointment, he decided, because of a combination of personal circumstances which occurred during that year, to relinquish all his public employment at the end of 1986. Accordingly, he submitted his application for retirement allowance to PERS on November 24, 1986, requesting a January 1, 1987 effective date. He was then, by reason of age, military service, and total period of continuous public employment, eligible for veteran's retirement benefits pursuant to N.J.S.A. 43:15A-61(a), which accords a retirement allowance of one-half of the compensation received *179 during the last year of employment.[2] Petitioner's total compensation for 1986 was $49,597, of which $35,862 represented compensation for his presiding-judge service.
On its initial review of petitioner's application, PERS concluded, and so advised him, that his presiding-judge salary represented "additional compensation beyond your base salary" and was therefore, pursuant to N.J.S.A. 43:15A-6(r) and N.J.A.C. 17:2-4.1, barred from inclusion for pension-calculation purposes. Petitioner's objection to this decision was ultimately referred for contested-case disposition to the Office of Administrative Law, and a hearing was eventually conducted by an administrative law judge (ALJ).[3]
Recognizing that there was no essential dispute of fact and relying on the record documentation of the history and background of petitioner's appointment and actual service as further explicated by the testimony of AOC's Assistant Director in charge of municipal court services and considering further the testimony of a PERS representative and petitioner himself, the ALJ concluded that petitioner's presiding-judge salary was not creditable for pension purposes. He reasoned that petitioner's status in that position was that of an independent contractor rather than that of an employee, that his duties as presiding judge were "extracurricular," and that his service as presiding judge was temporary. The ALJ consequently filed an initial decision recommending exclusion of the presiding-judge salary from petitioner's pension calculation, and PERS adopted his decision as its own, without further fact-finding or rationale.
*180 In rejecting the reasoning of the ALJ which PERS accepted in full, we consider first the controlling statutory and regulatory provisions on which he relied. N.J.S.A. 43:15A-6(r) defines "compensation" for pension-calculation purposes as
the base or contractual salary, for services as an employee, which is in accordance with established salary policies of the member's employer for all employees in the same position but shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement or additional remuneration for performing temporary or extracurricular duties beyond the regular work day or the regular work year....
In implementing the statutory definition, N.J.A.C. 17:2-4.1 denominates all non-creditable compensation which does not constitute part of "base or contractual salary" as "extra compensation," and while it does not undertake to define "extra compensation" beyond the statutory definition, subparagraph (d) of that regulation gives illustrative examples of extra compensation, providing that
Some of the forms of compensation that have been defined as extra compensation are as follows: overtime, bonus, longevity lump sum payments, individual retroactive salary adjustments or individual adjustments to place a member at maximum in his salary range in the final year of service, increments granted for retirement credit or in recognition of the member's forthcoming retirement or in recognition of the member's years of service in the community.
The sole question before us then is whether PERS, in concluding that the presiding-judge salary was extra compensation, correctly applied the statutory concepts of "services as an employee" and "additional remuneration for performing temporary or extracurricular duties" to the undisputed facts relating to petitioner's presiding-judge position.[4] We are persuaded that its interpretation and application here were clearly in error.
*181 First, we think it plain that the characterization of petitioner's status as that of an independent contractor rather than an employee is unsustainable as a matter of law, fact, common sense, and public policy. The point need not be belabored. It is self-evident that a judicial officer paid by public funds to perform judicial duties holds a public office whose obligations, burdens, benefits, and definitions are wholly antithetical to the essential attributes of an independent contractor  a transactional status exclusive to the private market, and characterized by the attributes of self-employment and self-determination in the economic and professional sense. Compare, e.g., New Jersey Property-Liability Ins. Guar. Ass'n v. State, 195 N.J. Super. 4, 8-9 (App.Div. 1984); Dee v. Excel Wood Products Co., Inc., 86 N.J. Super. 453, 459 (App.Div. 1965). As we understand the record, the ALJ assigned the status of independent contractor to petitioner because he was satisfied that in performing his presiding-judge duties, petitioner was neither the employee of the AOC nor of the employing municipality which the AOC used as the payment conduit.
The ALJ was correct in the sense that a judicial officer cannot fairly be regarded as the employee of the judicial branch's support arm, as the AOC by constitutional definition is. See N.J. Const. (1948), Art. VI, § 7, par. 1. He was also correct in the sense that a judicial officer performing vicinage-wide duties cannot fairly be regarded as the employee of the single municipality within the vicinage which has appointed him to the municipal judgeship which constitutes a qualification of his appointment by the Supreme Court to his presiding judgeship. But the conclusion that since neither of these entities was petitioner's employer, he must therefore have been an independent contractor does not follow. Petitioner was paid by State funds irrespective of the form of its conduit. He was paid to perform under the supervision of the Assignment Judge of the vicinage those judicial duties which were assigned to him by, with the approval of, and under the aegis of the Supreme Court of this State. If the ultimate source of funding determines *182 the identity of the employer, it was the State. If the direct and immediate payroll source determines the identity of the employer, then it was the "employing" municipal unit. If the appointing authority determines the identity of the employer, then it was the Supreme Court. Ultimately, of course, petitioner's employer was the public itself. Clearly, the definition of the employment relationship  its creation, conditions and terms  depends in large measure on the context in which the inquiry is made. For purposes of the definition of compensation embodied in N.J.S.A. 43:15A-6(r), it is apparent that the employer was that public unit which carried petitioner on its direct payroll, namely, the Borough of Roselle. Hence, petitioner, as required by the statute, was receiving his presiding-judge salary "for services as an employee."
We find equally indefensible PERS' conclusion that petitioner's presiding-judge duties were both temporary and extra-curricular. As to the latter, these duties were not dehors his position as presiding judge  they defined and constituted his position as presiding judge. In any event, they could have been no more "extracurricular" to his underlying municipal court judgeship than are the Assignment Judge's additional duties, assigned by the Supreme Court pursuant to R. 1:33-4, and for which by statute he receives compensation additional to his Superior Court judge compensation, extra compensation which is beyond doubt creditable. In any event, it seems clear to us both from the statutory reference to duties "beyond the regular work day or the regular work year" and the regulatory list of examples above referred to that the legislative intendment in the use of the term extracurricular was essentially to prohibit creditability for overtime, special assignments, and the like.
We understand the Deputy Attorney General at oral argument to have suggested that the most significant bar to creditability here was the temporary nature of the position because of its creation as part of a pilot project, which by definition is *183 intended to be temporary.[5] We are satisfied, however, that the pilot-project basis of petitioner's appointment notwithstanding, the "temporary" bar of the statutory definition does not apply here. First, the statutory bar does not refer to a temporary position but rather to the performance of "temporary duties beyond the regular work day or the regular work year." Whether or not the position of presiding judge was itself temporary, the duties assigned to that position were not temporary. That is to say, for as long as the position was continued in being by Supreme Court order, the administrative and judicial duties it entailed and which petitioner had performed were the regular duties of that position, not extra duties assigned to an otherwise existing position. The point is that the presiding-judge duties were not temporarily assigned to petitioner as a municipal court judge. The municipal court judgeship was only a qualification for the quite separate and independent appointment as presiding judge, and the duties for which petitioner was paid as presiding judge pertained to the presiding judgeship, not the municipal court judgeship. Moreover, the presiding judgeship position itself is not fairly characterizable as temporary. Its creation was rather for a specific one-year term. The effect of the pilot-project basis was simply to render indefinite the length, if any, of the extension of that original term by the Supreme Court. In any event, of course, the four positions have continued uninterruptedly for almost four years.
Finally, in petitioner's case, it is clear that even if the position, as opposed to the duties, was temporary, he would still not be disqualified from claiming pension creditability of the presiding-judge salary. N.J.S.A. 43:15A-7(b) expressly provides that a veteran is entitled to PERS membership based on *184 the status of a temporary employee only, provided that he has had "at least one year's continuous service" as a temporary employee. Petitioner's appointment as presiding judge lasted exactly one full year  appointment as of January 1, 1986 and retirement as of January 1, 1987. It is clear then that the salary paid for the temporary position would be creditable compensation under N.J.S.A. 43:15A-6(r). On that basis alone, we would hold the contested salary to be creditable.[6]
While we are aware that the interpretation and application by an administrative agency of the statute it is charged with implementing are entitled to deference, it is also well settled that we are not bound thereby, particularly when, as here, legal issues alone are involved and the facts are not in dispute. See, e.g., Smith v. Director, Div. of Taxation, 108 N.J. 19, 26 (1987); Terner v. Spyco, Inc., 226 N.J. Super. 532, 547 (App.Div. 1988). We are persuaded that the action of PERS in excluding petitioner's presiding-judge salary from his creditable compensation was based on its misapplication of statutory prescription and, for the reasons herein set forth, that salary was fully creditable since it constituted his "base or contractual" pay.
Accordingly, the decision appealed from is reversed, and we remand to PERS for recalculation of petitioner's veteran's retirement allowance in accordance with this opinion.
NOTES
[1] The amount of compensation fixed by the Supreme Court was a per diem rate prorated on the basis of $60,000 annually for a 261-day work year with an annual maximum of 162 work days. The presiding judge's vouchers were, moreover, required to be approved by the Assignment Judge of the vicinage prior to their submission.
[2] The regular PERS service retirement allowance, prescribed by N.J.S.A. 43:15A-48, is determined in accordance with the formulae therein stated, which ordinarily yield a substantially lesser annual amount.
[3] By the time of the hearing, the issue of the potential responsibility of either the AOC or the employing municipality for a reserve deficiency in petitioner's account were his full 1986 salary held pensionable had been stipulated out of the case in accordance with an unreported decision of this court on that issue in a separate and unrelated matter.
[4] No question has been raised respecting the authority of the Supreme Court under its constitutional powers to create the position of presiding judge of the municipal courts. Indeed, respondent concedes that authority. We further point out that no suggestion is here made that the presiding-judge duties were assigned for the primary purpose of enhancing his pension. Compare DiMaria v. Bd. of Tr. of P.E.R.S., 225 N.J. Super. 341 (App.Div. 1988), with Hiering v. Board of Trustees of Public Employees, 197 N.J. Super. 14 (App.Div. 1984).
[5] We understand the Deputy Attorney General to have conceded that had the position of Presiding Judge-Municipal Court been created by a formally adopted rule of court with all other aspects of compensation, employment and duties the same as under the pilot project, the compensation therefor would have been creditable.
[6] We are at a loss to understand the ALJ's suggestion that "at least one year's continuous service" means more than one year. We also see no basis to withhold the benefit of this provision in the case of a part-time employee if, as here, the nature of the position is part-time and PERS does not suggest otherwise.