**620 A.2d 440**

WALTER SIRI, CAROLYN MEZZADRI, JOHN BRATOWICZ AND
ROBERT SIENKIEWICZ, PETITIONERS–APPELLANTS, v.
BOARD OF TRUSTEES OF THE TEACHERS' PENSION AND
ANNUITY FUND, RESPONDENT.

CAROLYN NICKLAUS, PETITIONER APPELLANT, v. BOARD
OF TRUSTEES OF THE TEACHERS' PENSION AND
ANNUITY FUND, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 12, 1993—Decided February 10, 1993.

Before Judges ANTELL, DREIER and VILLANUEVA.

*Tanya Pushnack Friedman* argued the cause for petitioners-appellants Siri, Mezzadri, Bratowicz and Sienkiewicz (A–5030–90T1) (*Zazzali, Zazzali, Fagella & Nowak,* attorneys;

*Richard A. Friedman,* of counsel; *Ms. Friedman,* on the brief).

*Olga E. Bradford,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* of counsel; *Ms. Bradford,* on the brief).

*Tanya Pushnack Friedman* argued the cause for petitioner-appellant Nicklaus (A–1301–91T1) (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Ms. Friedman,* on the brief).

*Louis G. Karagias,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Martin L. Wheelwright,* Deputy Attorney General, of counsel; *Mr. Karagias,* on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

These are appeals from determinations by the Board of Trustees ("Board") of the Teachers' Pension and Annuity Fund ("TPAF") that certain compensation earned by petitioners is not creditable for purposes of pension benefits. Because they involve common questions of law we have consolidated both appeals for purposes of disposition. In *Siri v. Board of Trustees,* petitioners are school teachers who were denied pension credit for compensation received in return for services rendered as department heads. In *Nicklaus v. Board of Trustees,* petitioner was a school psychologist who was denied pension credit for the increased salary she received when her working requirements were increased from two and half days a week to three days a week.

### The Siri Appeal

Petitioners are employed as teachers and held the position of department chairpersons in their respective departments for the academic school years of 1988–89 through 1990–91 at the Henry P. Becton Regional High School in East Rutherford. The

department chairperson position involved administrative and supervisory responsibilities. Appointments thereto, for which application must be made by the teacher, are made on a year-to-year basis by the Board of Education upon recommendation of the Superintendent. Appointment for one year provides no assurance that the appointee will be reappointed in any following year. Compensation for performing the duties of department chairperson is paid in accordance with a salary schedule contained in the collective bargaining agreement between the Carlstadt–East Rutherford Board of Education and the Becton Education Association and is included in the same pay check received by petitioners for their base contractual salary.

According to the uncontradicted evidence, the duties of a department chairperson include: interviewing candidates for teaching positions, supervising classroom teachers, writing and discussing with the teachers evaluations of their performance, overseeing substitute teachers, orientation of new teachers, ordering teaching material such as text books, and checking lesson plans.

Whether or not the department head remuneration is creditable for pension purposes is controlled by *N.J.S.A.* 18A:66–2(d), which defines "compensation" for purposes of a TPAF pension as

the *contractual salary, for services as a teacher as defined in this article,* which is in accordance with established salary policies of the member's employer for all employees in the same position *but shall not include* individual salary adjustments which are granted primarily in anticipation of the member's retirement or *additional remuneration for performing temporary or extracurricular duties beyond the regular school day or the regular school year.* [ (emphasis added).]

The word "teacher" is comprehensively defined by *N.J.S.A.* 18A:66–2p. to include "any ... supervisor."

The Board, adopting the recommended decision of an Administrative Law Judge, concluded that petitioners' work as department chairpersons constituted the performance of "temporary or extracurricular duties" for which the compensation received was not creditable for pension purposes under the statute. In

addition to the foregoing legislative enactment, the Board acted on the basis of the following regulation which appears at *N.J.A.C.* 17:3–4.1:

(a) Only a member's base or contractual salary shall be subject to pension and group life insurance contributions and creditable for retirement and death benefits in the Fund.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) Where it is evident from the record that a salary reported for benefits includes extra compensation, such extra compensation shall be considered not creditable for benefits and all contributions made thereon shall be returned without interest.

(d) Some of the forms of compensation that have been defined as extra compensation are as follows:

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

8. Additional compensation paid for performing temporary administrative or supervisory assignments such as department head, acting principal and the like[.]

■ We disagree with the Board's determination that the duties of a department chairperson are "temporary" within the meaning of *N.J.S.A.* 18A:66–2(d) so as to be non-creditable for pension purposes. First, to be excluded as creditable compensation, the statute requires not only that the duties be temporary, but that they be performed "beyond the regular school day or the regular school year." The Board made no finding that the department chairpersons' duties are performed beyond the regular school day or the regular school year. To the contrary, the evidence established that those duties were performed *during* the regular school day. For this reason alone, the Board's determination must be reversed.

■ Furthermore, the statute does not exclude from credit for pension purposes compensation for the temporary performance of permanent duties; it only excludes the performance of temporary or extracurricular duties. Thus, the duty itself must be temporary or extracurricular in order to be non-creditable. In our view, the duties of department chairpersons clearly are not temporary or extracurricular. This important supervisory and administrative work is integral to the effective

functioning of the school program. The fact that appointments to this position are temporary in the sense that they are for a one year duration does not suffice to convert these vital duties to temporary status.

As we noted earlier, *N.J.A.C.* 17:3–4.1(d)8 declares non-creditable for retirement benefits "[a]dditional compensation paid for performing temporary administrative or supervisory assignments such as department head, acting principal and the like." The fact that the regulation fails to include the statutory condition for non-creditability that the additional duties must be performed outside the regular school day or the regular school year did not relieve the agency from making such a finding in this case. The statute prevails over the regulation. "[I]n the execution of its rule-making power a state agency may not go beyond declared statutory policy." *In re Increase in Fees by N.J. St. Bd. of Dentistry,* 166 *N.J.Super.* 219, 223, 399 *A.*2d 665 (App.Div.1979). "Administrative regulations, of course, cannot alter the terms of a legislative enactment or frustrate the policy embodied in the statute." *N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm.,* 82 *N.J.* 57, 82, 411 *A.*2d 168 (1980). Moreover, in view of our observation, *supra,* that the duties of a department chairperson are neither "temporary [n]or extra-curricular," we can only read the language of the regulation that excludes from credit additional compensation paid for performing "temporary ... assignments such as department head, acting principal and the like" as being applicable only in cases where the teacher is temporarily assigned to substitute for the regularly appointed holder of the position.

The result we reach is compatible with that in *Rokos v. State Dept. of Treasury,* 236 *N.J.Super.* 174, 564 *A.*2d 1217 (App.Div. 1989), on closely comparable facts. There, petitioner was a presiding judge of the Municipal Courts of Union County during the calendar year 1986. The position was part of a year-long pilot project initiated by a Supreme Court task force order. Despite the fact that the project was subsequently extended for

four years, petitioner retired at the end of 1986 and submitted his application for retirement benefits based on the salary he received as presiding judge. The Public Employees Retirement System ("PERS") determined that petitioner's presiding judge salary represented additional compensation beyond base salary and was therefore barred from inclusion for pension calculation purposes. That determination was reached pursuant to *N.J.S.A.* 43:15A–6(r), a statute practically identical in terms to the one under which the Board purported to act herein. In reversing the PERS decision, the court reasoned in the following language:

> First, the statutory bar does not refer to a temporary position but rather to the performance of "temporary duties beyond the regular work day or the regular work year." Whether or not the position of presiding judge was itself temporary, the *duties* assigned to that position were not temporary. That is to say, for as long as the position was continued in being by Supreme Court order, the administrative and judicial duties it entailed and which petitioner had performed were the regular duties of that position, not extra duties assigned to an otherwise existing position. The point is that the presiding judge duties were not temporarily assigned to petitioner as a municipal court judge. The municipal court judgeship was only a qualification for the quite separate and independent appointment as presiding judge, and the duties for which petitioner was paid as presiding judge pertained to the presiding judgeship, not the municipal court judgeship. Moreover, the presiding judgeship position itself is not fairly characterizable as temporary. Its creation was rather for a specific one-year term. The effect of the pilot-project basis was simply to render indefinite the length, if any, of the extension of that original term by the Supreme Court. In any event, of course, the four positions have continued uninterruptedly for almost four years.
>
> [*Id.* at 183, 564 *A.2d* 1217].

The numerous factual analogies between *Rokos* and the case presented are too clear to require delineation and the conclusions drawn therein are equally mandated here so as to require that all remuneration received by petitioners for service as department heads be credited for pension purposes.

### *The Nicklaus Appeal*

This petitioner was a school psychologist who was employed with the Haworth School System from 1970 until her retirement in January 1991. She worked regular hours on a

two and a half day per week basis until the Fall of 1986 when the Child Study Team requested the Haworth Board of Education to increase petitioner's work schedule to three days a week. The reason for this, according to the Team, was that there was "so much work that needed to be done, particularly in the area of counselling." The request by the Child Study Team was repeated in 1987, and in a letter dated September 17, 1987, the principal of the Haworth Public School advised the School Superintendent that petitioner would be "employed an additional thirty-six (36) half days to provide in-school group/individual counselling. This amount of time has been allocated in the FLOW THROUGH GRANT (Haworth/Alpine, 1987–88) and approved at the Board of Education meeting on January 20, 1987."

On June 4, 1987, prior to the commencement of the 1987–88 school year, the acting superintendent/principal of the Haworth Public School wrote a letter "To whom it may concern," stating that petitioner "will receive Flow–Through Support Funding in the amount of $3600 for the 1987–88 school year." Although the Board had approved petitioner's three-day work week prior to the commencement of the 1987–88 school year, the letter-contract which petitioner received during the summer prior to the start of that school year, indicated that she would only be working two and a half days a week. However, during that year, petitioner worked three days a week and received additional compensation for the extra half day. Petitioner's salary for the years in question was derived from the doctoral level of the teachers salary guide contained in the collective bargaining agreement in the amount of $43,370. However, since petitioner worked part-time, that sum was pro-rated on a per diem basis. Instead of receiving one-half of the full time salary for a two and a half day week, she now received three-fifths of the full time salary for three days a week. For the extra half day's work, she received an additional $3,903.30 for the 1987–88 school year.

During that year petitioner received two separate pay checks, one based on the two and a half days, the second based on the additional half day. The second check was received on a monthly basis and reflected income tax withholdings. However, neither teachers' dues nor pension deductions were taken from petitioner's check in payment for the additional half day. At petitioner's request, the additional half day provision was written into her contract for the 1988–89 school year.

Petitioner appeals from the Board's determination that the additional remuneration received for working the extra half day during the 1987–88 school year was non-creditable for pension purposes under *N.J.S.A.* 18A:66–2(d).

We conclude that the additional half day's work did not constitute "temporary or extracurricular duties beyond the regular school day or the regular school year." In light of our discussion of *Rokos v. State Dept. of Treasury, supra,* in the *Siri* appeal, it is clear that the three-day work week, which began in 1986 and continued to the date of petitioner's retirement, did not constitute a temporary duty; nor did it involve the provision of services beyond the regular school day or the regular school year. Certainly, there was no factual finding to such an effect.

The Administrative Law Judge, whose opinion was adopted by the Board, concluded that because petitioner was not paid for the additional thirty-six half days of work for the 1987–88 school year "under the letter she received and pursuant to the collective bargaining agreement between the Board of Education and the Teachers' Association," the additional salary of $3,903.30 was not part of petitioner's base or contractual salary, and was therefore not creditable for retirement and death benefits in the fund. We conclude that the absence of any reference to the extra half day in the letter-contract petitioner received from the Board for the 1987–88 school year is too slender a reed on which to rest a judgment that the additional

monies were not a part of petitioner's contractual salary under *N.J.S.A.* 18A:66–2(d).

We pointed out earlier that petitioner's added stipend was paid on a regular monthly basis in equal payments by check that reflected income tax withholdings. As the Supreme Court said in *Koribanics v. Bd. Ed. of Clifton,* 48 *N.J.* 1, 6, 222 *A.*2d 87 (1966), "[t]he term 'salary' used in a legislative enactment has been recognized judicially to apply to monies received by a person on a fixed and continuous basis, *i.e.,* normally paid in regular periodic intervals in specific regular amounts. This is the commonly understood meaning of the term." Here, there can be no doubt that the Haworth Board of Education obliged itself to increase petitioner's working time and to pay her additional remuneration as base salary. That it was only by inadvertence that it failed to include this modification of petitioner's base contract in its letter agreement to petitioner at the start of the 1987–88 school year is seen from the fact that it was included in the letter agreement for the following year when petitioner called the oversight to its attention. We therefore hold that the increased compensation petitioner was paid for serving the additional thirty-six half days during the 1987–88 school year was creditable compensation for pension purposes.

The determination of the Board is reversed in both appeals.