770 A.2d 1195

MICHAEL C. CORTESE, PETITIONER–APPELLANT, v. BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 13, 2001—Decided March 29, 2001.

Before Judges PRESSLER, KESTIN and ALLEY.

*Andrew Bayer* argued the cause for appellant Michael C. Cortese (*DeCotiis, Fitzpatrick, and Gluck,* attorneys; *Mr. Bayer* and *Peter A. Tucci, Jr.* on the brief).

*Kimberly A. Sked,* Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.,* Attorney General; *Nancy*

Kaplan, Assistant Attorney General, of counsel; *Ms. Sked,* on the brief).

The opinion of the court was delivered by

ALLEY, J.A.D.

Michael C. Cortese appeals from the October 21, 1999, determination of the Board of Trustees of the Public Employees' Retirement System (PERS), adopting the July 27, 1999, initial decision of an Administrative Law Judge (ALJ) that a $63,685 payment to petitioner that was made by Essex County Utilities Authority (ECUA) was not creditable compensation for pension purposes. We affirm.

Pursuant to a written agreement dated October 15, 1995, ECUA employed petitioner, a Certified Public Accountant, as its Director of Finance and Administration. Under Section (4)(a) of the agreement, "Base Compensation," ECUA paid him "on an hourly basis for the actual amount of hours of service provided ... calculated on the basis of an annual salary of $89,000." The agreement also provided in Section 4(b)(1) for "Additional Compensation" as follows:

> In the event that the ECUA undertakes any financing (either through the issuance of short-term project notes or long-term revenue bonds) for or with respect to the Solid Waste System during the term of this Agreement, [petitioner] shall (in consideration for services provided in support thereof), receive additional compensation ... in a fixed amount equal to $1.00 per $1,000 principal amount of project notes or revenue bonds issued.

Petitioner performed services for ECUA in connection with ECUA's issuance in 1996 of $63,685,000 in revenue bonds. He received $63,685 for these services as "Additional Compensation" under Section 4(b)(1) of the Agreement. No other short-term project notes or long-term revenue bonds were issued by ECUA during the term of the agreement. This appeal turns on whether that payment is pensionable.

On its initial review of petitioner's application, PERS concluded that the $63,685 payment represented additional compensation beyond his base salary and, pursuant to *N.J.S.A.* 43:15A–6(r) and

*N.J.A.C.* 17:2–4.1, that this amount would not be included in petitioner's compensation for pension-calculation purposes. PERS ultimately referred petitioner's objection to this decision to the Office of Administrative Law for contested-case disposition.

Reviewing the history and background of petitioner's job duties and actual services, the ALJ concluded that petitioner's commission was not creditable for pension purposes. She reasoned that petitioner's bond-financing activities were part of his job responsibilities under the contract, but were a thing apart from his regular job duties and were "extracurricular." The ALJ's initial decision thus recommended exclusion of the commission from petitioner's pension calculation.

In considering the reasoning of the ALJ, which PERS accepted in full, we look first to the controlling statutory and regulatory provisions on which she relied. *N.J.S.A.* 43:15A–6(r) defines "compensation" for pension-calculation purposes as

the base or contractual salary, for services as an employee, which is in accordance with established salary policies of the member's employer for all employees in the same position but *shall not include* individual salary adjustments which are granted primarily in anticipation of the member's retirement or *additional remuneration for performing temporary or extracurricular duties beyond the regular work day or the regular work year* . . . .

[Emphasis added.]

In implementing the statutory definition, *N.J.A.C.* 17:2–4.1 denominates all non-creditable compensation that is not part of "base or contractual salary" as "extra compensation," and while it does not undertake to define "extra compensation" beyond the statutory definition, subparagraph (d) of that regulation gives the following examples of extra compensation:

Some of the forms of compensation that have been defined as extra compensation are as follows: overtime, bonus, longevity lump sum payments, individual retroactive salary adjustments or individual adjustments to place a member at maximum in his salary range in the final year of service, increments granted for retirement credit or in recognition of the member's forthcoming retirement or in recognition of the member's years of service in the community.

The sole question before us is whether PERS, in concluding that the commission was extra compensation, correctly applied the

statutory concepts of "services as an employee" and "additional remuneration for performing temporary or extracurricular duties" to the undisputed facts relating to petitioner's position at the ECUA. We are persuaded that the result here was correct, although we base this conclusion on a somewhat different ground than that used by the ALJ and adopted by PERS.

We are not bound by the interpretation and application by an administrative agency of the statute it is charged with implementing, but we generally accord deference to such interpretations and applications. *See, e.g., Smith v. Director, Div. of Taxation,* 108 *N.J.* 19, 26, 527 *A.*2d 843, (1987); *Terner v. Spyco, Inc.,* 226 *N.J.Super.* 532, 547, 545 *A.*2d 192 (App.Div.1988).

We conclude that, with the exceptions referred to below, the determinations made by the ALJ and PERS were based on substantial evidence in the record and were not arbitrary, unreasonable, or capricious. We part company, however, with the ALJ and PERS over the characterization of the payment to petitioner as having been made for work that was "extracurricular." From the statutory reference to duties "beyond the regular work day or the regular work year," and from the foregoing regulatory list of examples, we conclude that the term "extracurricular" was essentially used to prohibit pension credit for overtime, special assignments, and the like. The work on the bond issue was not in that sense "extracurricular," because it was connected with the financial operations of the employer, ECUA.

We are satisfied, however, the work is question, though not "extracurricular," was "temporary" as defined by the statute. The statutory bar does not refer to a temporary position but rather to the performance of "temporary ... duties." *Rokos v. State, Dept. of Treasury, Div. of Pensions, Public Employees' Retirement System,* 236 *N.J.Super.* 174, 564 *A.*2d 1217 (App.Div. 1989). Whether or not petitioner's position was itself temporary, the duties pertaining to bond issues that were assigned to that position, and were to arise only "in the event that the ECUA undertakes any financing," were "temporary."

"Temporary" is the opposite of "permanent" and means "for a limited time only," *Flamm v. City of Passaic,* 14 *N.J. Misc.* 362, 365, 184 *A.* 748 (C.P.1936), or "lasting for a limited time." *Webster's Ninth New Collegiate Dictionary* 1214 (9th ed.1984). "Temporary" also means "made to supply a passing need," *The New Shorter Oxford English Dictionary* 2259 (1973), and this describes well the services provided by petitioner in connection with the $63,685,000 bond issue. Petitioner's services pertaining to the bond issue in our view are most precisely described as "occasional." The term "occasional" means "[h]appening or operating on some particular occasion; limited to specific occasions ..." and "[a]cting or employed for the occasion or on particular occasions." *Id.* at 1432. The occasional services to be rendered by petitioner under the agreement were a category of temporary services even less enduring and regular than those of a temporary office employee hired for a short period. Petitioner's services for which the $63,685 was paid plainly were occasional and thus "temporary" as provided in *N.J.S.A.* 43:15A-6(r).

Accordingly, we conclude that the PERS determination excluding petitioner's $63,685 in temporary earnings from his creditable compensation for pension purposes was correct because it was for "temporary ... duties" and did not form part of his "base or contractual" pay. Moreover, we do not address in this appeal the public policy grounds discussed in the ALJ's initial decision. We express no views as to that discussion and dispose of this appeal solely on the grounds stated above.

The decision appealed from is affirmed.