31 N.J. Super. 292 (1954)
106 A.2d 346
WILLIAM B. MATTHEWS, PLAINTIFF-APPELLANT,
v.
THE BOARD OF EDUCATION OF THE TOWN OF IRVINGTON IN THE COUNTY OF ESSEX, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1954.
Decided June 23, 1954.
*294 Before Judges JAYNE, STANTON and HALL.
Mr. Cassel R. Ruhlman, Jr., argued the cause for appellant (Messrs. Ruhlman and Ruhlman, attorneys).
Mr. Ira D. Dorian argued the cause for respondent (Mr. A. Albert Eichler, attorney).
The opinion of the court was delivered by HALL, J.S.C. (temporarily assigned).
The plaintiff appeals from an adverse judgment in the Law Division in his action in lieu of prerogative writ whereby he sought to compel the defendant to fix his pension at an amount greater than that being paid him.
The stipulated facts demonstrate that on June 30, 1953 the plaintiff, who was a teacher and athletic coach in the employ of the defendant board of education, retired and applied to it for a pension under the veterans' pension statute, R.S. 43:4-1 et seq. He met the requirements of the statute, being honorably discharged from the naval service of the United States in World War I, having attained the age of 62 years and having been continuously employed by the defendant for more than 20 years.
R.S. 43:4-3 provides:
"A person so retired shall be entitled, for and during his natural life, to receive by way of pension, one-half of the compensation then being received by him for his service, which shall be paid in the same way and in the same installments as his compensation has been payable."
*295 During his last year of employment, the school year 1952-53, he received a salary of $5,400, which was paid to him by the defendant in equal semi-monthly installments. He was advised of this salary by formal letter of notification from the board, dated June 12, 1952, which he expressly accepted by appending his signature at the foot thereof. In addition, he received from the board, pursuant to the recommendation of the superintendent of schools and by action of the board at its meeting on December 10, 1952, the sum of $700, which was designated in the record of the board's action as an "honorarium" as head coach of football during the season then recently concluded.
The defendant fixed the plaintiff's pension at one-half of the $5,400 salary, or $2,700 per year, and has paid at that rate. The plaintiff contends that the $700 sum should also be included as part of "the compensation then being received by him for his service" and that his annual pension should therefore be in the amount of $3,050. His action sought to compel that result. The lower court denied him relief on the ground that the term "compensation," under the circumstances here present, was intended to include only his contractual salary. 29 N.J. Super. 232 (Law Div. 1953).
The question posed on this appeal therefore is: What "compensation" was being received by the plaintiff for his service at the time of his retirement?
While the statute requires us to determine the issue only in the light of the factual situation existing at the retirement date, we may be aided in resolving the question by the events of prior years. The plaintiff was first employed by the defendant on January 10, 1922, when it appointed him "to teach physical training to boys and coach athletics in the Irvington High School." He served in those capacities continuously from that date to his retirement, except for two years prior to 1931. At the board meeting of September 9, 1931 the plaintiff was appointed football coach for the school year beginning September 9, 1931, "but that *296 the matter of salary be laid over until the next meeting." We find no later record of the fixing of any such salary. However, annually thereafter, commencing with the meeting held January 13, 1932 and continuing to December 13, 1939, the board voted payment of additional sums to plaintiff, and other fall sport coaches, designated as "for services rendered," "for extra services," "for coaching services," or for "payment of extra services * * * to the coaches," varying in amount from $200 to $250. These payments were always voted after the conclusion of the sport season. Beginning with the year 1939, and for the football season of each year thereafter, the payments voted, ranging from $300 to $700, were designated as "honorariums," and were still authorized after the conclusion of each season. There is no evidence of any advance contractual or other arrangement providing for any of these payments.
Deductions, at the plaintiff's request, were made from the "honorariums" paid following the 1951 and 1952 seasons for contributions based thereon to the State Teacher's Pension and Annuity Fund.
It is, of course, fundamental that, in the construction or interpretation of a statute, a court must have as its object the ascertainment of the intention of the Legislature. We must give effect to words used according to the clear and plain meaning they ordinarily import and avoid giving any construction which would distort that meaning or give greater effect than the language requires. A judicial tribunal should be ever mindful that it has no legislative authority. Alexander Hamilton Hotel Corporation v. Board of Review, etc., 127 N.J.L. 184 (Sup. Ct. 1941); Adams v. Atlantic County, 137 N.J.L. 648 (E. & A. 1948); Preziosi v. Buonaccorsi, 16 N.J. Super. 15, 21 (App. Div. 1951); City of Newark v. Craster, 28 N.J. Super. 49, 53 (App. Div. 1953).
Equally well settled is the principal that, with respect to a pension statute, the employee has only such rights and benefits as are based upon and within the scope of the provisions *297 thereof. Cf. Laden v. Daly, 132 N.J.L. 440 (Sup. Ct. 1945), affirmed 133 N.J.L. 314 (E. & A. 1945); McFeely v. Pension Commission of City of Hoboken, 8 N.J. Super. 575 (Law Div. 1950); City of Newark v. Craster, supra.
The term "compensation," as used in R.S. 43:4-3, must then be given its plain, intended meaning. Webster's New International Dictionary (2nd ed.) defines the word as: "That which constitutes, or is regarded as, an equivalent or recompense * * *; remuneration, recompense * * *." The connotation is clearly that of a quid pro quo for services rendered, as distinct from a gift, bonus or other form of gratuitous or voluntary payment.
The defendant board of education, since 1939, termed each additional annual payment to the plaintiff an "honorarium," whereas prior to that year they were denominated by language having a much less gratuitous import. We are not, of course, bound by the terminology used. We look to the substance and not to the form. But the circumstances of the payments, both before and after 1939, indicate to us clearly the true nature of them, no matter by what name they were called. They were not contracted for and agreed upon in advance of the coaching work, but were authorized in each instance on the recommendation of the high school principal or superintendent of schools after the season was concluded and the work fully performed.
While a pattern of anticipated conduct may have been set, the plaintiff does not contend that there was any legal obligation on the board to make the payments each year or that he could have rightfully refused to coach football if a subsequent payment was not to be forthcoming. In fact, plaintiff acquired tenure of service after the expiration of employment for three consecutive calendar years, or for three consecutive academic years together with employment at the beginning of the next succeeding year, following his original employment on January 11, 1922 "to teach physical training to boys and to coach athletics." R.S. 18:13-16 *298 and 18:13-17. Having acquired his tenure in the special capacities for which he was employed, he was obligated, it seems to us, to continue to perform coaching services as part of his duties, at least so long as the board continued the position or did not transfer him to other work. See Seidel v. Board of Education of Ventnor City, 110 N.J.L. 31 (Sup. Ct. 1933), affirmed 111 N.J.L. 240 (E. & A. 1933). So it appears that at no time after he acquired tenure could he have compelled the defendant to pay him anything beyond his regular salary for his services as a football coach.
We conclude that all of these subsequent extra payments were entirely gratuitous and voluntary on the part of the board in recognition of the plaintiff's coaching work, perhaps on the theory that such work entailed, in addition to his regular teaching duties, longer hours than required of other teachers having no such extensive extracurricular services to perform. He had his regular, fixed salary as payment for all of the work which he might be assigned to do.
The plaintiff urges that the term "compensation" in R.S. 43:4-3 is broader in scope than the word "salary," and so should be deemed to include payments of the type here involved. Assuming "salary" to have a narrower meaning, reason for the use of the more inclusive term, without any indication of legislative intent to include gratuitous payments therein, may be found in the fact that the benefits of the act apply to those in office, position or employment of the State, and each county, municipality or school district. The remuneration for certain municipal officers may be determined on a fee basis rather than by fixed salary. See, for example, R.S. 40:171-58, relating to building inspectors in cities.
In no comparable enactment can we find any manifestation of legislative desire to encompass anything beyond the plain meaning and ordinary connotation of regular recompense for services in the office, position or employment. For example, the statute creating the Teachers Pension and Annuity Fund uses the words "compensation" and "salary" somewhat interchangeably, *299 without apparent discrimination in meaning or intent to cover anything more than fixed pay. R.S. 18:13-51, 18:13-54, 18:13-55, 18:13-75 and 18:13-93. Likewise in the acts passed from time to time during the past several years, authorizing the payment of a bonus to employees of any political subdivision temporarily to alleviate the effects of the high cost of living, it is provided that such payments are in addition to the "regular salary or pay" and that the provisions of the act shall extend to state employees whose "compensation" is paid in full by the political subdivision. See L. 1951, c. 3, p. 20, secs. 1 and 3, as amended by L. 1952, c. 38, p. 130. Incidentally, it may be noted that this statute further provides that such bonus payment shall not be taken into consideration or included in any pension calculation.
Therefore we hold that the word "compensation" in R.S. 43:4-3 does not include the additional sum of $700 which the defendant authorized and paid the plaintiff in 1953 as an "honorarium" for coaching football during the fall season of 1952.
The plaintiff suggests that, because the defendant made deductions from this payment, as well as from that awarded in 1952, for purposes of contribution from his compensation to the Teachers Pension and Annuity Fund, it thereby considered and treated the honorarium as in fact payment for services rendered. We do not agree. These two deductions were made only at the plaintiff's express request. None were made or requested in any of the many previous years. It may well have been that the plaintiff, seeing his retirement shortly approaching, asked that such be done to attempt to create or substantiate, in a unilateral fashion, the very position he now urges. No unfavorable inference binding on the defendant can be raised therefrom.
It is unnecessary for us to decide and we express no opinion on the question of whether these annual payments to the plaintiff were within the authority or power of the board, nor do we intend to indicate that our conclusion would necessarily *300 be the same if extra compensation for coaching services had been the subject of an express, contractual arrangement between the parties entered into in advance of each season.
The judgment is affirmed.