197 N.J. Super. 14 (1984)
484 A.2d 20
WILLIAM T. HIERING, SR., APPELLANT,
v.
BOARD OF TRUSTEES OF PUBLIC EMPLOYEES RETIREMENT SYSTEM, DIVISION OF PENSIONS, DEPARTMENT OF TREASURY AND WILLIAM J. JOSEPH, DIRECTOR OF DIVISION OF PENSIONS, DEPARTMENT OF TREASURY, STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 23, 1984.
Decided November 5, 1984.
*15 Before Judges ANTELL, J.H. COLEMAN and SIMPSON.
Lomell, Muccifori, Adler, Ravaschiere & Amabile, attorneys for appellant (Robert A. Fall, on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondents (James J. Ciancia, Assistant Attorney *16 General, of counsel; Ellis I. Medoway, Deputy Attorney General, on the brief).
The opinion of the court was delivered by SIMPSON, J.A.D.
William T. Hiering, Sr. appeals from a final determination of the Board of Trustees of the Public Employees Retirement System (Board and PERS) that $56,000 remuneration he received in 1980 as General Counsel of the Ocean County Utilities Authority (OCUA) and Municipal Prosecutor of the Borough of Seaside Heights was not creditable for pension purposes under N.J.S.A. 43:15A-6r. Hiering was born on December 27, 1915, is a veteran of World War II, became a member of PERS in 1950, and had 31 years and one month of creditable service at his retirement date of March 1, 1981. As a veteran, he qualifies under N.J.S.A. 43:15A-61a or b for a retirement allowance of 1/2 of the compensation received during his last year of creditable service. Presumably he would also qualify for regular service retirement of 31/60 of his "final compensation" pursuant to N.J.S.A. 43:15A-48a and b, but under N.J.S.A. 43:15A-6h the pension would be calculated upon his average annual compensation for the 3 years of service producing the largest possible benefit. The veteran's pension would be $28,500 if the $56,000 qualifies ($40,000 as General Counsel and $16,000 as Municipal Prosecutor) since there is no question about his $1000 compensation as an agent for the Division of Alcoholic Beverage Control. A regular pension would be considerably less if the $56,000 is not creditable. It would then be based upon compensation for prior service as a state legislator, estimated to be about $11,000 per year.
The Board initially rejected Hiering's application on March 18, 1981 citing N.J.A.C. 17:2-4.1, and the matter was referred to the Office of Administrative Law on June 18, 1981 following a request for hearing. Hearings were held by the Administrative Law Judge (ALJ) on November 29, 1982 and June 7, 1983. *17 On September 6, 1983 the ALJ filed her Initial Decision which reversed the Board and found the $56,000 creditable for Hiering's last year of public employment. On October 27, 1983 the Board rejected the ALJ Initial Decision, affirmed its original denial of the application, and directed its Secretary to prepare "consistent" proposed findings of fact and conclusions of law. These were approved by the Board on November 15, 1983 and the present appeal followed.
In rejecting the conclusion of the ALJ, the Board found that "... the salaries received by [Hiering] in 1980 constitute salary adjustments granted primarily in anticipation of retirement. As such the salaries are excluded from being considered `compensation' within the meaning of that term as defined in N.J.S.A. 43:15A-6(r)." This statute provides:
r. "Compensation" means the base or contractual salary, for services as an employee, which is in accordance with established salary policies of the member's employer for all employees in the same position but shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement or additional remuneration for performing temporary or extracurricular duties beyond the regular work day or the regular work year. In cases where salary includes maintenance, the retirement system shall fix the value of that part of the salary not paid in money which shall be considered under this act.
The original Board determination cited N.J.A.C. 17:2-4.1 which provides:
(a) Only a member's base or contractual salary, plus the value of maintenance, if applicable, shall be subject to pension and group life insurance contributions and creditable for retirement and death benefits in the system.
(b) The board shall reserve the right to question any salary to determine its creditability where it is evident from the record that a salary reported for benefits includes extra compensation.
(c) Such extra compensation shall be considered not creditable for benefits and all contributions made thereon shall be returned without interest.
(d) Some of the forms of compensation that have been defined as extra compensation are as follows: overtime, bonus, longevity lump sum payments, individual retroactive salary adjustments or individual adjustments to place a member at maximum in his salary range in the final year of service, increments granted for retirement credit or in recognition of the member's forthcoming retirement or in recognition of the member's years of service in the community.
(e) All claims involving an increase in compensation of more than 15 percent over that of the previous year, as reported to the retirement system, shall be *18 investigated. Those cases where a violation of the statute is suspect shall be referred to the Board.
The differences in the findings of fact by the Board and ALJ, on the same record, are identified in the following portion of the Board's November 15, 1983 final determination:
Accordingly, the Board hereby adopts ... the following Findings of Fact ... of the Initial Decision with additions (indicated by underlining) and deletions of the conclusory language used by the Administrative Law Judge (indicated by brackets):
1. The salaried position of municipal prosecutor for the Borough of Seaside Heights, at the rate of $16,000. per year, was established by the governing body to become effective January 1, 1980. The Mayor of the Borough testified that the position was established for the purpose of controlling the cost of prosecutorial services for the municipal court. Petitioner was appointed to the salaried position on January 1, 1980. His law firm had represented the Borough in the capacity of municipal prosecutor for 30 years; prior to 1980 the compensation arrangement had always been on a billable, hourly basis.

2. Petitioner testified that he did not anticipate that he would be retiring the following year when he accepted the position of municipal prosecutor, commencing on January 1, 1980.
3. When petitioner's firm dissolved in December 1980, and he chose to continue his representation of the OCUA, petitioner could no longer represent the Borough of Seaside Heights as municipal prosecutor. He (was compelled) decided to resign from the position as municipal prosecutor. Following this resignation, the municipality hired another law firm and reverted to the billable, hourly fee arrangement.

4. During the latter part of 1979, petitioner proposed to the OCUA that because its legal costs had stabilized over the course of the last two years, it would be to their benefit to appoint him as general counsel on a salaried basis of $40,000. per year. Petitioner's law firm had previously represented the OCUA since 1970 on a billable, hourly fee arrangement.

5. Petitioner was aware that his appointment as general counsel to the OCUA would benefit his pension fund; however, petitioner testified that he did not make the proposal in anticipation that he would retire during the following year.
6. Petitioner (was compelled to) made the request that OCUA return to a billable hourly fee arrangement in 1981. He testified that this was requested because of an unanticipated increase in litigation which caused more time to be expended than had been estimated, and because of petitioner's need, occasioned by the dissolution of his firm, to hire an independent contractor on an hourly basis in order to assist in performing the legal work for the OCUA.
7. Petitioner filed an application for retirement in January 1981. He testified that he filed the application at that time because he had just resigned from his salaried position as municipal prosecutor of the Borough of Seaside *19 Heights and because he was returning to a billable, hourly fee arrangement with the OCUA.
8. Although he has retired from positions of public employment in PERS, petitioner remains engaged in the private practice of law. He has continued to represent OCUA on a billable, hourly fee arrangement.

The scope of our appellate review of the Board's decision that is contrary to the recommendations of the ALJ is set forth in Public Advocate Dep't v. Public Utilities Bd., 189 N.J. Super. 491 (App.Div. 1983). We must determine whether the findings could reasonably have been reached on sufficient credible evidence in the record, considering the proofs as a whole, with due regard to the opportunity of the ALJ to judge the witnesses' credibility and with due regard also to the agency's expertise where such expertise is a pertinent factor. 189 N.J. Super. at 499. We consider the ALJ report only as a part of the record to determine whether the Board's findings are supported by substantial credible evidence. See State, Dept. of Health v. Tegnazian, 194 N.J. Super. 435, 449 (App.Div. 1984).

I
Since it is undisputed that Hiering's appointments as General Counsel and Municipal Prosecutor were to new positions, the first question is whether N.J.S.A. 43:15A-6r is applicable at all. The statute and the Board's conclusions of law both refer to "salary adjustments ... granted primarily in anticipation of [Hiering's] retirement." No authority is cited by the ALJ or the Board for the conclusion that the actions of the Borough of Seaside Heights and OCUA in creating these new positions constitute "salary adjustments." The conversion from prior vouchered independent contractor provisions for legal services to salaried employee positions is clearly within the discretion of both OCUA and the Borough. Had Hiering continued in these positions for one more year, it would seem that the only question as to creditable compensation would have been whether second year increases were "in anticipation of retirement." Board of Trustees of Teachers' Pension, etc. v. La Tronica, 81 N.J. Super. 461 (App.Div. 1963) is inapposite *20 since the situation in that case involved extra compensation during final years of employment of three teachers. Although actuarial principles may be upset in the present case, the problem is with the statutory scheme and should be appropriately addressed by the Legislature. Under the present provisions, part time work is creditable as well as fulltime work. Nineteen years of part time service at the minimum of $500 (N.J.S.A. 43:15A-39), followed by a 20th year as, say, county counsel (at a relatively high salary), would result in a veteran's pension calculated solely on the final year's earnings. Fasolo v. Pensions Div. Trustees, 181 N.J. Super. 434 (App.Div. 1981) is closer to the instant situation, and there sewer attorney fees were held to be creditable despite the resultant huge increase in pension benefits.
It therefore appears that conversions of previously vouchered legal services into salaried positions, as in this case, do not constitute "salary adjustments" within N.J.S.A. 43:15A-6r. As noted in In re Barnert Memorial Hospital Rates, 92 N.J. 31, 40 (1983):
Of course, an administrative agency may not under the guise of interpretation give a statute a greater effect than the language allows. (citation omitted) In the absence of explicit indication of a special meaning, words will be given their ordinary and well understood meaning.

II
Assuming, however, that N.J.S.A. 43:15A-6r may be interpreted to permit the Board to equate the compensation of Hiering for the two new positions as increases subject to exclusion from pension creditability, the operative facts from the record in this case do not support the Board's conclusions. Instead, the findings of the ALJ have been "molded" to support the disparate conclusions of the Board. In findings of fact numbers 1, 2, 5, 6, and 7 the insertion of the language that the mayor or Hiering "testified" to the fact found by the ALJ implies rejection of the asserted propositions of fact by these witnesses. The conclusion that the witnesses made "self-serving *21 statements of intent" is meaningless. The further conclusion that the ALJ did not expressly find the witnesses credible is not entirely correct. As to Mayor Tompkins, she wrote "Mayor Tompkins corroborated petitioner's testimony. Not a scintilla of evidence has been presented to rebut petitioner's assertion, and I have no reason to disbelieve him (emphasis added)."
N.J.A.C. 17:2-4.1(e) required the Board to investigate Hiering's claim and the ALJ correctly noted that "no such investigation was conducted in this case." Instead, the Board has asserted a "strong presumption" arising from the findings of fact. Inferences may be drawn from operative facts, but there is no "presumption" that arises therefrom or that must be "overcome" or "rebutted."
Finding of fact number 3 by the Board represents an improper distortion of the ALJ's finding that is fully supported by the record. Although neither Hiering nor the Board supplied the citation, the Advisory Committee on Professional Ethics in fact rendered an opinion that supports the ALJ finding that Hiering was compelled to resign as municipal prosecutor in order to continue representing OCUA. Opinion 460, 106 N.J.L.J. 205 (September 4, 1980).
It is true, as noted by the ALJ, that the coincidences of the creation of the two positions and Hiering's subsequent retirement are "striking and suspect." She also correctly analyzed all the evidence and reached the inescapable conclusion that Hiering had met his burden of proof and was entitled to retire at an opportune time that would maximize his benefits. The Board's conclusions were result-oriented and in effect created a conclusive presumption based upon suspicion, surmise, innuendos and dissatisfaction with a poor statutory scheme as to pension entitlements. The remedy called for is amendment to the statutes and proper investigation by the Board, not unsubstantiated conjecture that casts improper aspersions on the *22 governing bodies of the OCUA and Borough of Seaside Heights.
It should also be noted that Hiering had attained age 60 and completed over 20 years of service for veterans special retirement under N.J.S.A. 43:15A-61a as early as December 27, 1975. His firm had served as Municipal Prosecutor and OCUA attorney for at least five years prior thereto. Nevertheless, the salaried positions in question were not created until 1980. Although the coincidences of creation of the positions and the retirement followed by abolition of the positions were certainly suspect, the record in this case fully supports the Hiering explanations.
Reversed and remanded for computation of the appropriate pension as required by this opinion. We do not retain jurisdiction.