258 N.J. Super. 389 (1992)
609 A.2d 1294
JOHN CHAPEL, PETITIONER-APPELLANT,
v.
BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, DIVISION OF PENSIONS, RESPONDENT-RESPONDENT, AND FORT LEE BOARD OF EDUCATION, INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1992.
Decided July 13, 1992.
*390 Before Judges PETRELLA, R.S. COHEN and KESTIN.
Roger W. Breslin, Jr., argued the cause for appellant (Beattie Padovano, attorneys; Roger W. Breslin, Jr. on the brief).
Louis G. Karagias, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Mary C. Jacobson, Deputy Attorney General, of Counsel; Louis G. Karagias, Deputy Attorney General, on the brief).
Robert T. Tessaro, Attorney for Intervenor, Fort Lee Board of Education, on the letter brief.
The opinion of the court was delivered by KESTIN, J.S.C., (temporarily assigned).
From 1971 until his retirement in 1988, petitioner (Chapel) was employed by the Fort Lee Board of Education as Supervisor *391 of Buildings and Grounds. In 1974, the Board of Education also appointed Chapel as Clerk of the Works for several construction projects. He was paid additionally for this position.[1]
With one brief hiatus in 1979, Chapel continued to discharge these further duties along with his responsibilities as Supervisor of Buildings and Grounds until his retirement. In 1982 the "Clerk of the Works" title was changed to "Construction Consultant".
Throughout the period in which Chapel functioned as Supervisor of Buildings and Grounds and as Clerk of the Works/Construction Consultant, he was paid separately for each position with the customary deductions for taxes, social security and state disability reflected in each paycheck. Pension deductions, however, were taken only from his paychecks as Supervisor of Buildings and Grounds.
About a year before his retirement, Chapel was advised by an employee of the Division of Pensions that the Board of Education should have been deducting pension contributions from his salary as Clerk of the Works/Construction Consultant as well as from his salary as Supervisor of Buildings and Grounds. Chapel then requested corrective action by the Board of Education, i.e., that pension deductions be taken from his salary as Construction Consultant. No such action was taken.
Shortly after his retirement, Chapel formally requested the Public Employees' Retirement System (PERS) to include in the base for computing his retirement benefits the compensation he had received as Clerk of the Works/Construction Consultant. This request was denied and Chapel demanded a hearing under the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., and the Office of Administrative Law Act, N.J.S.A. 52:14F-1 et seq.
*392 A contested case hearing was held before Administrative Law Judge Reiner who concluded that Chapel's service as Clerk of the Works/Construction Consultant was pension-eligible and that, under N.J.S.A. 43:15A-7.1b, the Board of Education was responsible for one-half of Chapel's contribution. Judge Reiner's initial decision was filed on December 7, 1990.
In a letter to Chapel's attorney captioned "Final Administrative Determination", dated January 17, 1991, the PERS Board of Trustees "rejected the recommendation of the Administrative Law Judge and affirmed the denial of salary received as construction consultant and clerk of the works to be used toward pension calculation." This document noted further that "[t]he Board has directed the Secretary to draw up findings of fact and conclusions of law consistent with its decision which will be presented to the Board at its meeting for discussion and review. The next meeting of the Board will be on February 20, 1991." On February 22, another letter was sent. It was similar in form to the January 17 letter except that it noted the receipt of cross-exceptions by Chapel's attorney dated January 4, referred to the January 17 letter as the Board's "original decision" and noted that that decision would be "reviewed at a subsequent meeting for [the Board's] final administrative determination."
A letter dated May 17, 1991, recited that the PERS Board of Trustees at its meeting on May 15, 1991 "adopted the Findings of Fact contained in the report of the ALJ...." The letter then set out the reasons why the PERS Board's conclusions differed with those reached by Judge Reiner. The May 17 document ended thusly:
For the reasons cited above, the Board of Trustees, PERS, rejects the December 7, 1990 Initial Decision of the ALJ and affirms the denial of the use of the monies received by John Chapel in his capacity as Clerk of the Works and Construction Official, which were paid in addition to his regular salary as Supervisor of Building [sic] & Grounds, for retirement calculation purposes. Pursuant to New Jersey Court Rules, you have a period of 45 days from the date of service of this notice in which to file an appeal with the Appellate Court from this Final Administrative Determination of the Board of Trustees.
*393 We view the decision of the PERS Board of Trustees as wanting in two respects and we reverse.
The Board of Trustees found that the "monies [Chapel] received as Clerk of the Works and Construction Consultant were in addition to the regular compensation he received in his PERS eligible position of Supervisor of Building [sic] and Grounds." From this undisputed fact, the Board of Trustees concluded that the payment received for the second position was not pension-creditable because it was "additional remuneration for performing temporary or extracurricular duties beyond the regular work day or the regular work year." [Emphasis deleted, citing N.J.S.A. 43:15A-6r.] The PERS Board of Trustees concluded further that the monies received by Chapel in respect of his additional duties were a "bonus", a type of non-creditable extra compensation listed in N.J.A.C. 17:2-4.1(d), because the term "bonus" was used in the Board of Education's appointment resolutions to describe the payment Chapel was to receive for his position as Clerk of the Works/Construction Consultant over and above his salary as Supervisor of Buildings and Grounds.
This issue may not be resolved by reliance on labels. Whatever the additional payment was called, it must be understood for what it truly was in the pension sense.
A test for pension creditability is whether the amount received is "compensation" as defined in N.J.S.A. 43:15A-6r. Compensation and salary are synonymous for this purpose. See Fasolo v. Board of Trustees, 181 N.J. Super. 434, 438 A.2d 328 (App.Div. 1981). "Salary" has been defined in case law as "monies received by a person on a fixed and continuous basis, i.e., normally paid in regular periodic intervals in specific regular amounts." Koribanics v. Board of Educ., 48 N.J. 1, 6, 222 A.2d 87 (1966). The dictionary definition of "bonus" has also been recognized in our case law as "`something given or paid in addition to the usual or expected.'". In re Estate of Gregoriou, 142 N.J. Super. 465, 468, 361 A.2d 636 (Co.Ct. 1976), rev'd *394 on other grounds, 153 N.J. Super. 44, 378 A.2d 1168 (App.Div. 1977). See also Webster's New International Dictionary, (2d Ed. 1957).
The income received by Chapel for his duties as Clerk of the Works/Construction Consultant was not of the type excluded from pension credit by N.J.A.C. 17:2-4.1(d) as extra compensation for services within the scope of the employment, e.g., a bonus. Furthermore, that income was not "additional remuneration for performing ... extracurricular duties beyond the regular work day or the regular work year...." N.J.S.A. 43:15A-6r. The statutory term "extracurricular duties" may be taken as encompassing incidental additional services directly related to the basic employment. See, e.g., Matthews v. Board of Educ., 31 N.J. Super. 292, 106 A.2d 346 (App.Div. 1954). Measured by the definitions and these latter factors, the payments made to Chapel for his duties as Clerk of the Works/Construction Consultant were unquestionably compensation as that term is used in N.J.S.A. 43:15A-6r.
Neither can it be said that the duties of Clerk of the Works/Construction Consultant were temporary in nature, another criterion for exclusion embodied in N.J.S.A. 43:15A-6r. Fourteen years of regular involvement in a function, with one brief hiatus near the halfway point, bespeaks a job that is anything but temporary. Cf. Rokos v. State of New Jersey, 236 N.J. Super. 174, 182-183, 564 A.2d 1217 (App.Div. 1989).
Irrespective of the use of the term "bonus" in the Board of Education's appointing resolutions, it is clear that Chapel was being named to a second job in the Board's area of control, with functions which were separate from and additional to his responsibilities as Supervisor of Buildings and Grounds. Each of Chapel's jobs was the subject of a separate contract between employer and employee. As far as we can determine from the record, neither job was dependent upon the other; nor were they functionally related, apart from the fact that they were being performed by the same person. See Fasolo v. Board of *395 Trustees, supra, 181 N.J. Super. at 444, 438 A.2d 328; cf. Hiering v. Board of Trustees, 197 N.J. Super. 14, 484 A.2d 20 (App.Div. 1984). We are aware of no general provision in the pension laws or anywhere else which, in the absence of a conflict of interests, prohibits a public employee from holding two pension-eligible positions. See Rokos v. State of New Jersey, supra. We hold, therefore, that each of Chapel's salaries was pension creditable, that pension deductions should have been made from his Clerk of the Works/Construction Consultant salary, and that he is now eligible for pension benefits based upon his service and compensation in that position as well as his service and compensation as Supervisor of Buildings and Grounds.
Whether N.J.S.A. 43:15A-7.1b requires the public employer to pay one-half of the employee's costs for pension coverage under the circumstances here presented appears not to be in issue between the affected parties, Chapel and the Board of Education. Judge Reiner noted in her initial decision that the Board of Education had expressed "no reason why this statute would be inapplicable to petitioner, assuming petitioner as Clerk of the Works and Construction Consultant qualifies for a pension." Accordingly, Judge Reiner determined the Board of Education to be obliged to make the payment specified in the statute. The PERS Board of Trustees, apparently sua sponte, rejected Judge Reiner's determination in this respect. Chapel has addressed the question in his brief on appeal because of the Board of Trustees' decision. The Board of Education has not joined issue on this question before us either.
Apparently, the Board of Education has recognized, throughout the pendency of this case, that its responsibility to make the payment prescribed by N.J.S.A. 43:15A-7.1b depended simply upon whether Chapel's employment as Clerk of the Works/Construction Consultant was determined to be pension-eligible. *396 The PERS Board of Trustees held[2] that, even if pension eligibility were to be determined in Chapel's favor, his previous enrollment in PERS as Supervisor of Buildings and Grounds excused the Board of Education from this payment responsibility. Such a determination is at variance with the plain meaning of the statute, which establishes a responsibility conditioned only upon the passage of more than one year "from the time that contributions would have been required...." Accordingly, the Board of Education will be obliged to fulfill its responsibilities thereunder in respect of the employee, Chapel.
While we reverse the decision of the PERS Board of Trustees on the merits, comment is warranted on the Board's continuing inability to meet its responsibilities under §§ 10(c) and (d) of the Administrative Procedure Act (APA) in a timely fashion. In addition to the instant matter, we are mindful of manifestations of this problem in Szczepanik v. State of New Jersey, 232 N.J. Super. 491, 557 A.2d 705 (App.Div. 1989); Estate of Hagel v. Board of Trustees, 226 N.J. Super. 182, 543 A.2d 1010 (App.Div. 1988); DiMaria v. Board of Trustees, 225 N.J. Super. 341, 542 A.2d 498 (App.Div. 1988), certif. denied 113 N.J. 638, 552 A.2d 164 (1989), and Hiering v. Board of Trustees, 197 N.J. Super. 14, 484 A.2d 20 (App.Div. 1984), as well as in one unreported decision which has been called to our attention, Zisa v. Board of Trustees, A-4317-89T2 (App.Div. May 31, 1991).
The reasons why the Legislature required an administrative agency's final decision to embody the qualities catalogued in N.J.S.A. 52:14B-10(d) and to meet the 45 day time requirement of N.J.S.A. 52:14B-10(c) have been clearly articulated in King v. New Jersey Racing Comm'n, 103 N.J. 412, 511 A.2d 615 (1986), and in DiMaria, supra. No good purpose will be served by rehearsing them here.
The Supreme Court in King held that the "deemed-approved" provision embodied in N.J.S.A. 52:14B-10(c) for an administrative *397 agency's failure to issue a final decision within the prescribed period of time  45 days unless an extension is agreed to by the agency head and the Director of the Office of Administrative Law (OAL)  should neither be automatically applied nor lightly imposed. The salutary principle of that case is that an agency which has committed a non-substantive error or has made a procedural mistake or has otherwise, in good faith, taken "action that addresses the merits of the ALJ's initial decision within the statutory time period" should not be faced with the draconian result of being deprived of final decision-making authority. The Supreme Court in King also said, however, that
were an administrative agency to proceed in bad faith, or with inexcusable negligence, or gross indifference, or simply to take no action whatsoever that purports "to adopt, reject or modify" the recommended report of the ALJ during the 45-day period following the issuance of the ALJ's initial decision, the "deemed-approved" provision of N.J.S.A. 52:14B-10(c) should be invoked; in that event the ALJ's initial decision should be transformed into the agency's final decision. [King, supra, 103 N.J. at 421, 511 A.2d 615.]
There are many good reasons having to do with the integrity of the administrative process why every reasonable indulgence should be afforded administrative agencies in the rightful exercise of their final decision-making roles. Accordingly, an exceptional and excusable lapse in timely conformance with the content requirements of N.J.S.A. 52:14B-10(d), in the absence of prejudice to a party, should not ordinarily result in application of the "deemed-approved" provision.
Nevertheless, an agency may relinquish the benefit of this latitude by persistent disregard of its procedural responsibilities. The APA clearly rests upon the principle that parties affected by an agency's decision are entitled to know the reasons for it. A corollary of that premise is that agency action that lacks the basic informational qualities established in the statute cannot be seen as a final administrative decision under the APA. Any such action is without those characteristics which the Legislature perceived to be necessary to invest *398 the administrative process with essential fairness, procedural regularity and decisional reliability.
Our decision in DiMaria v. Board of Trustees, supra, 225 N.J. Super. 341, 542 A.2d 498, was an effort to balance competing considerations embodied in the APA in the light of the principles advanced in King. The record of reported performance suggests, however, that the PERS Board of Trustees has failed, in the sense articulated by the Supreme Court in King, to earn the deference which should normally be accorded a state agency in this respect.
The recurrent lapses of the PERS Board of Trustees in this regard cannot be seen as being inadvertent. The Board cannot be said to be functioning in good faith compliance with its statutory responsibilities under the APA when it repeatedly fails to heed the content requirements of N.J.S.A. 52:14B-10 in a timely fashion. When the PERS Board of Trustees issues a pro forma rejection of an administrative law judge's decision, as it did here on January 17, 1991, and unilaterally postpones the final decision, it extends the administrative process in a way not contemplated by the Legislature. By repeatedly crafting its own procedure in derogation of statutory standards, it adopts the untenable view that it is above the requirements of law.
N.J.S.A. 52:14B-10(c) establishes a simple method for extending the 45-day final decision making period. An agency which cannot meet the time requirement in a particular case is obliged to seek the concurrence of the Director of OAL in extending the deadline. Consonant with the Director's responsibility to administer the APA and the OAL Act with fidelity to the Legislature's articulated policy objectives, approval of such a request ought not to be unreasonably withheld.
It may be well to hold, as we did in DiMaria, that a petitioner who has not been prejudiced should not receive the benefit of the APA's remedy for a delayed review of an administrative law judge's decision; but any State agency's repeated failure to *399 discharge its legislated responsibilities also implicates considerations of statutory integrity addressed in King, supra, 103 N.J. at 421, 511 A.2d 615. Against the implicit suggestion that the 1978 amendments to the APA were a futile exercise in reforming historic flaws in the administrative process, we note simply that the Legislature has established both a standard and a prescribed mechanism for dealing with persistent non-compliance with §§ 10(c) and 10(d) of the Act. Those means remain available for application in appropriate circumstances. Id.
Reversed.
NOTES
[1] $7,500 beginning in 1974; raised to $10,000 in 1980; and increased again to $15,000 in 1982.
[2] The PERS Board of Trustees mistakenly referred to N.J.S.A. 43:15A-7b.