817 A.2d 995 (2003)
358 N.J. Super. 339
Mark CAPONE, Appellant,
v.
NEW JERSEY RACING COMMISSION, Respondent.
Richard Silverman, Appellant,
v.
New Jersey Racing Commission, Respondent (Two Cases).
Superior Court of New Jersey, Appellate Division.
Argued February 20, 2003.
Decided March 18, 2003.
*996 Nancy Axilrod, Trenton, argued the cause for appellant Mark Capone in A-l340-01T2 (Sterns and Weinroth, attorneys; Mark D. Schorr, of counsel; Ms. Axilrod, on the brief).
Daniel J. Cohen, Morristown, argued the cause for appellant Richard Silverman in A-1452-01T5 and A-4827-01T5 (McElroy, Deutsch & Mulvaney, attorneys; Mr. Cohen, of counsel and on the brief; Michael Rowan, on the brief).
David M. Puteska, Deputy Attorney General, argued the cause for respondent New Jersey Racing Commission in A-1340-01T2 and A-1452-01T5 (Peter C. Harvey, Acting Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Mr. Puteska, on the brief).
Julie D. Barnes, Deputy Attorney General, argued the cause for respondent New Jersey Racing Commission in A-4827-01T5 (Peter C. Harvey, Acting Attorney General, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Harold W. Fullilove, Deputy Attorney General and Ms. Barnes, on the brief).
Before Judges SKILLMAN, CUFF and WINKELSTEIN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, requires an administrative agency to issue its final decision within forty-five days of receipt of the Administrative Law Judge's (ALJ's) initial decision, unless the Director of the Office of Administrative Law (OAL) extends this time period for good cause. N.J.S.A. 52:14B-10(c). If an agency fails to issue a final decision within the allowed time, the ALJ's initial decision is "deemed adopted" as the agency's final decision. Ibid. The APA also requires an agency to include in its final decision findings of fact and conclusions of law supporting any rejection or modification of an ALJ's initial decision. N.J.S.A. 52:14B-10(d). We have previously held that the lack of findings of fact and conclusions of law in an agency's final decision does not automatically *997 require the ALJ's initial decision to be "deemed approved." However, we also have stated that an agency decision issued without findings of fact and conclusions of law does not conform with the APA and that an unjustifiable delay in satisfying this requirement could result in the ALJ's initial decision being transformed into the agency's final decision. These appeals involve one case where the Racing Commission did not issue a final decision with findings of fact and conclusions of law until seven months after receipt of the ALJ's initial decision and a second case where the Commission failed to satisfy this requirement for an entire year. We conclude in both cases that the Commission's delays in issuing final decisions with findings of fact and conclusions of law constituted gross indifference to its responsibilities under the APA. Accordingly, the Commission's decisions are reversed and the ALJ's initial decisions are "deemed adopted" as the Commission's final decisions.
On April 5, 1998, the Board of Judges at the Meadowlands Racetrack suspended the harness horse training license of Mark Capone, the trainer of "Stonebridge Do Run," for thirty days for a "reversal of form" in a race held on March 27, 1998, compared to the horse's two prior races on March 15 and 20, 1998.[1] On April 8, 1998, the Board suspended the harness racing license of Richard Silverman, the driver of Stonebridge Do Run in all three races, for fifteen days for the same violation. Both Capone and Silverman appealed their suspensions to the Commission, which referred the matters to the OAL.
On January 11, 2001, a one-day hearing was held before an ALJ. On March 8, 2001, the ALJ issued an initial decision, which concluded that the Commission had failed to prove the charges against either Capone or Silverman. On March 9, 2001, the Commission acknowledged receipt of this initial decision. On March 22, 2001, the Deputy Attorney General representing the Commission filed exceptions to the ALJ's initial decision. On April 2 and 17, 2001, Capone and Silverman submitted replies to these exceptions. On April 12, 2001, the Director of the OAL granted the Commission an extension to June 7, 2001, of the forty-five day statutory period for rendering a final decision on the ground that the Commission needed additional time to review the exceptions.
On May 24, 2001, the Commission staff sent a pro forma letter to Capone and Silverman notifying them that the Commission had decided at its May 16, 2001 meeting to reject the ALJ's initial decision and reinstate the suspensions imposed by the Board of Judges. This letter also stated that "[a] copy of the Commission's written decision, which will memorialize its final disposition of this matter, together with a ruling implementing said decision will be forwarded under separate cover."
More than four-and-a-half months later, on October 9, 2001, the Commission issued its final decision, which rejected the ALJ's initial decision and reinstated the Board's ruling that Capone and Silverman had raced Stonebridge Do Run in an inconsistent manner resulting in a reversal of form on March 27, 1998. By separate orders, also issued on October 9, 2001, the Commission reimposed the suspensions imposed by the Board and directed that the periods of suspension commence on November 16, 2001.
Capone and Silverman filed separate notices of appeal from this final decision, and *998 the Commission granted their motions for stays pending the outcome of the appeals.
The procedural course of the second case was similar, except that the Commission took even longer to issue its final decision. The Board of Judges at Freehold Raceway suspended the license of Richard Silverman, also one of the appellants in the reversal of form appeal, for nine days for allegedly kicking a horse, "Star Fleet Cadet," in a race held on April 12, 2000. Silverman appealed this suspension and the matter was referred to the OAL. On March 1, 2001, a hearing was held before an ALJ that took less than an hour. On April 11, 2001, the ALJ issued an initial decision which concluded that the Commission had failed to prove the charge. On April 16, 2001, the Commission acknowledged receipt of the initial decision. On May 31, 2001, the Director of the OAL granted the Commission an extension to July 15, 2001, of the forty-five day statutory period for issuing a final decision on the ground that the Commission needed additional time to obtain and review the transcript of the hearing before the ALJ. However, the Commission did not even order this transcript until June 18, 2001, two months after it received the ALJ's initial decision. On July 17, 2001, the Director of the OAL granted the Commission a second extension of time to August 29, 2001, on the ground that the Commission had only received the transcript of the hearing on July 9, 2001.
On August 22, 2001, the Commission sent Silverman a pro forma letter, substantially similar to the one used in the reversal of form case, notifying him that the Commission had decided at its August 15, 2001, meeting to reject the ALJ's initial decision and reinstate the nine-day suspension imposed by the Board of Judges. More than seven-and-a-half months later, on April 11, 2002, a full year after the ALJ issued its initial decision, the Commission issued its final decision, which rejected the ALJ's decision and reinstated the Board's decision suspending Silverman's license for nine days. Silverman filed a notice of appeal, and the Commission granted a stay pending the outcome of the appeal.
Appellants argue that the Commission's final decisions must be reversed, because the ALJ's initial decisions were "deemed approved" when the Commission failed to issue its decisions within the extended statutory periods for issuance of final agency decisions. In addition, appellants argue that the Commission's final decisions are not supported by sufficient credible evidence in the record. Capone also argues that the administrative regulation upon which the Commission relied in suspending his licensewhich prohibits "any act or conduct detrimental to the sport" of harness racing, N.J.A.C. 13:71-7.29(a)(13)is impermissibly vague, thereby rendering it unconstitutional. We consolidate the three appeals.
We conclude that the suspensions of appellants' licenses must be reversed, because the ALJ's initial decisions, which found that the Commission had failed to prove the charges against appellants, were "deemed approved" when the Commission failed to issue final agency decisions with findings of fact and conclusions of law within the time allowed under N.J.S.A. 52:14B-10(c). In view of this conclusion, it is unnecessary to consider appellants' other arguments.
N.J.S.A. 52:14B-10(c) states in pertinent part:
The head of the agency, upon a review of the record submitted by the [ALJ], shall adopt, reject or modify the recommended report and decision no later than 45 days after receipt of such recommendations. In reviewing the decision of an [ALJ], the agency head may reject *999 or modify findings of fact, conclusions of law or interpretations of agency policy in the decision, but shall state clearly the reasons for doing so.... Unless the head of the agency modifies or rejects the report within such period, the decision of the [ALJ] shall be deemed adopted as the final decision of the head of the agency.... For good cause shown, upon certification by the director and the agency head, the time limits established herein may be subject to extension.
N.J.S.A. 52:14B-10(d) states in pertinent part:
A final decision shall include findings of fact and conclusions of law, separately stated....
The OAL regulations implementing N.J.S.A. 52:14B-10(c) and (d) provide in pertinent part:
(a) Time limits for ... issuing a final decision may be extended for good cause.
(b) A request for extension of any time period must be submitted no later than the day on which that time period is to expire. This requirement may be waived only in case of emergency or other unforeseeable circumstances.
....
(e) If the agency head requests an extension of the time limit for filing a final decision, he or she shall sign and forward a proposed order to the Director of the [OAL] and serve copies on all parties. If the Director approves the request, he or she shall within 10 days of receipt of the proposed order sign and issue the order and cause it to be served on all parties.
(f) Any order granting an extension must set forth the factual basis constituting good cause for the extension, set forth the dates of any previous extensions, and establish a new time for filing the decision or exceptions and replies. Extensions for filing ... final decisions may not exceed 45 days from the original decision due date. Additional extensions of not more than 45 days each may be granted only in the case of extraordinary circumstances.

[N.J.A.C. 1:1-18.8.]
In King v. New Jersey Racing Comm'n, 103 N.J. 412, 423-24, 511 A.2d 615 (1986), the Court held that a final decision of the Racing Commission that the Court determined to have been rendered without a full quorum did not provide a basis for application of the "deemed-approved" provision of N.J.S.A. 52:14B-10(c). The Court's discussion of the quorum issue presented in King indicates that the Commission had a good faith basis for believing it had the quorum required for issuance of a final decision. 103 N.J. at 416-18, 511 A.2d 615. Consequently, the Court characterized the Commission's final decision, issued without a proper quorum, as "technically defective." Id. at 424, 511 A.2d 615. In concluding that the ALJ's initial decision should not be "deemed approved" under such circumstances, the Court stated:
[W]ere an administrative agency to proceed in bad faith, or with inexcusable negligence, or gross indifference, or simply to take no action whatsoever that purports "to adopt, reject or modify" the recommended report of the ALJ during the 45-day period following the issuance of the ALJ's initial decision, the "deemed-approved" provision of N.J.S.A. 52:14B-10(c) should be invoked; in that event the ALJ's initial decision should be transformed into the agency's final decision.
[Id. at 421, 511 A.2d 615.]
In DiMaria v. Bd. of Trs. of Pub. Employees Ret. Sys., 225 N.J.Super. 341, 345-49, 542 A.2d 498 (App.Div.), certif. denied, *1000 113 N.J. 638, 552 A.2d 164 (1988), this court concluded, relying upon the Court's analysis of N.J.S.A. 52:14B-10(c) in King, that an ALJ's decision should not be automatically "deemed adopted" if an agency issues a final decision that is not accompanied by the findings of fact and conclusions of law required by N.J.S.A. 52:14B-10(d). However, we added a cautionary comment:
It is vitally important that an agency issue findings of fact and conclusions of law in compliance with N.J.S.A. 52:14B-10(d), and that it do so expeditiously. An administrative agency's explanation of the reasons for its decision is required not only for appellate review but also to assure the parties that their factual allegations and legal arguments have been fully considered. Therefore, this opinion should not be understood to condone delay in an agency's issuance of findings of fact and conclusions of law.
[Id. at 349, 542 A.2d 498 (citations omitted).]
We revisited this topic in Chapel v. Bd. of Trs. of Pub. Employees Ret. Sys., 258 N.J.Super. 389, 396-99, 609 A.2d 1294 (App.Div.1992), a case similar to this one, in which a state agencythere the Board of Trustees of the Public Employees Retirement Systemsent a pro forma letter notifying the affected party of the agency's rejection of the ALJ's initial decision, but then delayed four months before issuing an opinion containing the reasons for its final decision. Although we reversed the Board's final decision on the merits, we also commented upon its failure to issue an opinion containing findings of fact and conclusions of law within the forty-five day period allowed under N.J.S.A. 52:14-10(c). In an opinion written by Judge Kestin, we stated:
The Supreme Court in King held that the "deemed-approved" provision embodied in N.J.S.A. 52:14B-10(c) for an administrative agency's failure to issue a final decision within the prescribed period of time45 days unless an extension is agreed to by the agency head and the Director of the Office of Administrative Law (OAL)should neither be automatically applied nor lightly imposed. The salutary principle of that case is that an agency which has committed a non-substantive error or has made a procedural mistake or has otherwise, in good faith, taken "action that addresses the merits of the ALJ's initial decision within the statutory time period" should not be faced with the draconian result of being deprived of final decision-making authority.
....
Accordingly, an exceptional and excusable lapse in timely conformance with the content requirements of N.J.S.A. 52:14B-10(d), in the absence of prejudice to a party, should not ordinarily result in application of the "deemed-approved" provision.
Nevertheless, an agency may relinquish the benefit of this latitude by persistent disregard of its procedural responsibilities. The APA clearly rests upon the principle that parties affected by an agency's decision are entitled to know the reasons for it. A corollary of that premise is that agency action that lacks the basic informational qualities established in the statute cannot be seen as a final administrative decision under the APA. Any such action is without those characteristics which the Legislature perceived to be necessary to invest the administrative process with essential fairness, procedural regularity and decisional reliability.
[Id. at 396-98, 609 A.2d 1294 (citations omitted).]
We again considered a state administrative agency's responsibility to render a *1001 final decision containing findings of fact and conclusions of law within the forty-five day period allowed by N.J.S.A. 52:14B-10(c) in New Jersey Racing Comm'n v. Silverman, 303 N.J.Super. 293, 302-04, 696 A.2d 771 (App.Div.1997), a case that involved the same agency, the Racing Commission, and the same appellant, Richard Silverman, as in two of the three appeals addressed in this opinion. Although we decided the appeal on the merits rather than on the basis of the Commission's failure to comply with N.J.S.A. 52:14B-10(c) and (d), we strongly condemned the Commission's procedure, identical to the one followed in this case, of simply notifying appellant of its rejection of the ALJ's initial decision within the time allowed under the APA and then delaying the issuance of a final decision containing findings of fact and conclusions of law until many months later:
The Commission was seriously derelict in performing its responsibilities under the APA in this case. Since the ALJ's initial decision was served upon the Commission on March 13, 1995, it was required to issue its final decision no later than April 27, 1995. However, on April 26, 1995, the Commission simply announced that it was rejecting the part of the ALJ's decision relating to the length of the suspension of appellant's license, without issuing any written decision in conformity with N.J.S.A. 52:14B-10(d). The Commission then delayed nine months until it eventually issued its decision on January 22, 1996. During the intervening period, the Commission never applied to the OAL for an extension of time, as authorized by N.J.S.A. 54:14B-10(c) and N.J.A.C. 1:1-18.8, and the decision itself contains no explanation for the long delay in its preparation and release. Consequently, we have no way of knowing whether there was some exceptional circumstance which might justify the prolonged delay in the Commission issuing its rather brief and uncomplicated decision or whether it follows the practice we condemned in Chapel of routinely announcing "a pro forma rejection of an [ALJ's] decision,... and unilaterally postpon[ing] the final decision," thereby "extend[ing] the administrative process in a way not contemplated by the Legislature."
We have no need to pursue the point further because we conclude that the part of the Commission's decision relating to the length of appellant's license suspension must be reversed for other reasons. However, we take the occasion to again admonish state agencies that if a final decision rejecting or modifying an ALJ's initial decision is not issued in conformity with N.J.S.A. 52:14B-10(c) and (d), the ALJ's initial decision may be "transformed into the agency's final decision."
[Id. at 303-04, 696 A.2d 771 (citations omitted).]
This appeal requires further exposition of the intent of N.J.S.A. 52:14B-10(c) and (d). On its face, the APA's requirements for issuance of a final decision are categorical: N.J.S.A. 52:14B-10(c) states that "[u]nless the head of the agency modifies or rejects the [ALJ's] report within [the statutory] period, the decision of the [ALJ] shall be deemed adopted as the final decision of the head of the agency[;]" and N.J.S.A. 52:14B-10(d) states that "[a] final decision shall include findings of fact and conclusions of law." Reading these provisions literally, for a purported agency decision to constitute a "final decision," it must be issued within forty-five days and contain "findings of fact and conclusions of law," and in the absence of such a decision, the ALJ's initial decision must be "deemed adopted" as the agency's decision.
*1002 However, the Supreme Court in King rejected this kind of a literal reading of the "deemed approved" provision of N.J.S.A. 52:14B-10(c) by holding that "where the agency takes action that addresses the merits of the ALJ's initial decision within the statutory time period, which action is later determined by a court to be legally ineffective due to a non-substantive error or procedural mistake made by the agency, the agency should be permitted to take remedial steps to cure the deficiency and to issue a decision." 103 N.J. at 421, 511 A.2d 615. In DiMaria, we applied this flexible approach to the interpretation of N.J.S.A. 52:14B-10(c) as well as N.J.S.A. 52:14B-10(d) in a case where an agency issued a final decision that did not contain findings of fact and conclusions of law. 225 N.J.Super. at 345, 542 A.2d 498.
But the King holding we relied upon in DiMaria does not extend to a case where an agency proceeds in "bad faith, or with inexcusable negligence, or gross indifference" to its statutory responsibilities. 103 N.J. at 421, 511 A.2d 615. In King, there was no basis for finding "bad faith," "inexcusable negligence" or "gross indifference" because the Racing Commission issued a decision which was "timely, clearly and unambiguously expressed, and fully explained," 103 N.J. at 421, 511 A.2d 615, but defective because issued in violation of quorum requirements as determined by the Court. Id. at 416-18, 511 A.2d 615. In DiMaria, we did not specifically identify the circumstances which led us to conclude that the ALJ's initial decision should not be "deemed adopted." However, we note that DiMaria involved complex questions of pension law which the agency undoubtedly needed significant time to consider. Moreover, the agency's final decision, containing findings of fact and conclusions of law, was issued four months after receipt of the ALJ's initial decision, 225 N.J.Super. at 346, 542 A.2d 498, which was still within a period when the agency may have been able to secure an extension of time from the Director of OAL for issuance of its decision. See N.J.A.C. 1:1-18.8 (providing that an agency may obtain a first extension for issuing a final decision of not more than forty-five days for "good cause" and a second extension of forty-five days upon a showing of "extraordinary circumstances."); see also Wilson v. Bd. of Trs. of Police & Firemen's Ret. Sys., 322 N.J.Super. 477, 484-86, 731 A.2d 513 (App.Div.1998) (also involving a complex issue of pension law which the Board decided a little more than three months after receipt of the ALJ's initial decision).
We perceive no comparable basis in the present cases for concluding that the Commission's failure to issue its final decisions within the time allowed under N.J.S.A. 52:14B-10(c) was without "inexcusable negligence" or "gross indifference" to its responsibilities under N.J.S.A. 52:14B-10(c) and (d). The Commission's delays in the issuance of its final decisions were extremely lengthy: seven months in the reversal of form case and a full year in the horse kicking case. In addition, the records were small and the issues simple in both cases. The administrative hearing took less than a day in the reversal of form case and less than an hour in the horse kicking case. Only a small number of documents were admitted into evidence at the hearings. Moreover, the issue in both cases was solely factual and very straightforward: whether there was sufficient evidence in the record to support the Board of Judges' findings that appellants had committed the violations with which they were charged. In fact, when the Commission eventually acted, its decision was only six pages long in the reversal of form case and only a little more than one page long in the horse kicking case. We also *1003 note that the Commission has not even undertaken to show that it had a good excuse for failing to issue its decisions in a timely manner.
Despite the Commission's long and inexcusable delays in issuing its final decisions, it argues that the "deemed adopted" provision of N.J.S.A. 52:14B-10(c) should not be applied because appellants suffered no prejudice. "However, the automatic approval mandated by N.J.S.A. 52:14B-10(c) does not require a showing of prejudice." Mastro v. Bd. of Trs. of Pub. Employees' Ret. Sys., 266 N.J.Super. 445, 451, 630 A.2d 289 (App.Div.1993). To avoid application of the "deemed adopted" provision, an agency must show that it proceeded in "good faith" and that there was not "inexcusable negligence" or "gross indifference" in satisfying its responsibilities under N.J.S.A. 52:14B-10(c) and (d). King, supra, 103 N.J. at 421, 511 A.2d 615. The Commission failed to make this showing.
Moreover, we cannot disregard the fact that we specifically admonished this very agency in the prior Silverman appeal that its practice of simply notifying a party of its rejection of an ALJ's initial decision, followed many months later by issuance of a final decision containing findings of fact and conclusions of law, violates N.J.S.A. 52:14B-10(c) and (d) and could result in the ALJ's initial decision being "transformed into the agency's final decision." 303 N.J.Super. at 304, 696 A.2d 771 (quoting King, supra, 103 N.J. at 421, 511 A.2d 615). Under these circumstances, the Commission's failure to issue timely decisions constituted "inexcusable neglect" and "gross indifference" to its statutory responsibilities. Accordingly, the ALJ's initial decisions must be "deemed adopted."
Finally, we consider it appropriate to provide guidance to state agencies regarding compliance with N.J.S.A. 52:14B-10(c) and (d). The final sentence of N.J.S.A. 52:14B-10(c), which provides that "[f]or good cause shown, upon certification by the director and the agency head, the time limits established herein may be subject to extension[,]" clearly contemplates that any extension of the forty-five day period for issuance of a final agency decision shall be under the supervision and control of the Director of the OAL. See Chapel, supra, 258 N.J.Super. at 398, 609 A.2d 1294. An agency may not simply delay issuance of a final decision beyond the forty-five day deadline on its own. It must apply to the Director for an extension. Under the administrative regulations adopted to implement this provision, any such request must be submitted no later than the expiration of the forty-five day period for issuance of a final decision. N.J.A.C. 1:1-18.8(b). However, "[t]his requirement may be waived ... in any case of emergency or other unforeseeable circumstances." Ibid. Consequently, even if an agency fails to seek an extension of time for filing a final decision before expiration of the forty-five day period, it still should apply to the Director for an extension. See Newman v. Ramapo Coll. of N.J., 349 N.J.Super. 196, 201-03, 793 A.2d 120 (App.Div.2002); Town of Secaucus v. Hackensack Meadowlands Dev. Comm'n, 267 N.J.Super. 361, 390-92, 631 A.2d 959 (App.Div.1993), certif. denied, 139 N.J. 187, 652 A.2d 175 (1994). This will enable an adequate record to be developed concerning the agency's reasons for failing to issue a timely decision and failing to file a timely application for an extension, so that any reviewing court can determine whether the King criteria for relaxation of strict application of the "deemed adopted" provision of N.J.S.A. 52:14B-10(c) have been satisfied. We also reiterate that "approval of ... a request [for an extension of time] ought not to be unreasonably withheld." *1004 Chapel, supra, 258 N.J.Super. at 398, 609 A.2d 1294.
Accordingly, the Commission's final decisions are reversed and the ALJ's initial decisions are deemed adopted as the Commission's final decisions.
NOTES
[1] The Board of Judges also imposed a $500 fine upon Capone for failure to provide accurate information concerning an equipment change for the March 27, 1998 race, which is not challenged in this appeal.